Marisol PEREZ, Plaintiff,

v.

MCI WORLD COM COMMUNI-
CATIONS, D/B/A World
Com, Defendant.

No. 3:00–CV–1868–R.

United States District Court,
N.D. Texas,
Dallas Division.

July 30, 2001.

Michael J. Hindman, Rolle Breeland Ryan & Landau, Dallas, TX, for plaintiff.

Robert Elwood Sheeder, Megan Paige Whitten, Margaret L. Facklis, Jenkens & Gilchrist, Dallas, TX, for defendant.

Robert S. Brady, Michael R. Nestor, Young, Conaway, Straight & Taylor, LLP, Wilmington, DC, for debtors.

Alan R. Gordon, Mark Minuti, Jeffrey C. Hampton, Saul Ewing Remick & Saul LLP, Wilmington, DE, for Official Committee of Unsecured Creditors.

Jeffrey R. Hughes, Varnum, Riddering, Schmidt & Howlett, LLP, Grand Rapids, MI, William H. Sudell, Eric D. Schwartz, Morris Nichols Arsht & Tunnell, Wilmington, DE, for First Northern Bank and Trust.

## MEMORANDUM OPINION AND ORDER

BUCHMEYER, Chief Judge.

Plaintiff, Marisol Perez, filed suit against Defendant, MCI World Com Communications, D/B/A World Com, in the District Court for the 160th District of Dallas County, Texas, on July 27, 2000. Plaintiff's state court petition alleged Hostile Work Environment Sexual Harassment, Sex–Based Discrimination, and Retaliation, in violation of the Texas Commission on Human Rights Act, Tex. Labor Code § 21.001 *et seq.* On August 25, 2000, Defendant removed the case to this court on grounds of diversity jurisdiction. Now before this court is Defendant's Motion for Summary Judgment, filed on April 19, 2001, and Defendant's Written Objections to Plaintiff's Summary Judgment Evidence, filed on May 21, 2001. For the reasons stated below, the Motion for Summary Judgment is **GRANTED** and all claims against the Defendant are **DISMISSED WITH PREJUDICE.** The Written Objections are **OVERRULED.**

### Background

Plaintiff, Marisol Perez, began working as a tester in the Translations Department at MCI World Com Communications, D/B/A World Com (World Com), on March 31, 1998. On or about April 5, 1998, Plaintiff began dating Jeffrey Redding, a Project Manager in the Translations Department. Mr. Redding's position at World Com placed him somewhere in the Plaintiff's direct chain of command until the end of 1998, but he never acted as the Plaintiff's supervisor, nor, according to the Defendant, did Mr. Redding have authority to affect the terms or conditions of the Plaintiff's employment. The evidence does not reveal what Mr. Redding's position was after 1998, but both parties agree that he acted as a co-worker, in relation to the Plaintiff, as opposed to being her supervisor.

Plaintiff and Mr. Redding had a good deal of contact at work, including e-mails, phone calls, and frequent visits to their respective work areas. At some point in early 1999, Mr. Redding moved to another building, but their contact at work continued via e-mail and phone calls. According to the Plaintiff, Mr. Redding was abrasive and rude from the beginning of their relationship. He would drink a lot and become "very demanding," behavior that the Plaintiff attributed to Mr. Redding's problems with alcoholism and depression. (Def.App. p. 9) In April or May of 1999, the Plaintiff and Mr. Redding moved in together, and in August 1999, both parties agreed to end the relationship, at which point it appears that Mr. Redding moved out of their apartment.

In her deposition, Plaintiff describes a pattern of abusive and harassing behavior by Mr. Redding, beginning around the time of their breakup. This behavior, which took place both in and outside of the workplace, consisted of the following: stalking, constantly calling the Plaintiff, improperly obtaining personal information about the Plaintiff from World Com,

breaking into the Plaintiff's home and destroying her antique furniture, and enlisting a new girlfriend to call the Plaintiff and bother her. The evidence does not reveal what Mr. Redding said to the Plaintiff when he called her or spoke with her in person. The only evidence regarding the content of a conversation is the Plaintiff's recollection of a phone call from Mr. Redding's new girlfriend. Plaintiff described this conversation as follows: "And she said I was a low-life wetback and wouldn't become anything or accomplish anything and just said I'm digging my own grave because of Jeff, and that, you know, I wasn't going to have him anymore and that, you know, he was just going to destroy me. He was going to take everything from me and he did." (Def.App. p. 11) Plaintiff also describes an incident of physical violence in which Mr. Redding threw the her up against a wall and held her by her neck, injuring her finger, foot, and ankle. This incident appears to have taken place outside of their respective workplaces. Mr. Redding's behavior eventually caused the Plaintiff to seek assistance from the Richardson, Coppell, and Irving city police departments and at some point the Plaintiff entered a victim assistance program in Coppell.

During the year following the breakup, Plaintiff's performance at work began to suffer. Plaintiff's deposition alludes to having difficulty completing assignments due to her contact with Mr. Redding at work and her receipt of numerous phone calls from various police departments and district attorneys' offices regarding the harassment. World Com describes and documents a steady deterioration in the Plaintiff's performance, as well as repeated reprimands and warnings. World Com was aware of the problems Plaintiff was having with Mr. Redding, both from conversations with the Plaintiff regarding her performance, and from the occasions on which the Plaintiff went to her supervisors and to World Com's Human Resources Department to complain about Mr. Redding's behavior. However, the summary judgment evidence does not reveal anything, from either the Plaintiff or the Defendant, regarding Mr. Redding's work performance during the relevant time period, nor does it reveal whether anyone at World Com ever spoke with Mr. Redding about the situation. On January 28, 2000, after repeated warnings and failure to comply with the terms of a three-month probation period, World Com terminated Plaintiff's employment. In September 2000, World Com hired Tammy Lizama, a woman, to fill the Plaintiff's position. As of the filing of this case, World Com had not terminated Mr. Redding's employment.

In addition to alleging sex discrimination, sexual harassment, and retaliation arising from the situation with Mr. Redding, Plaintiff alleges sex discrimination arising from two other problems she encountered while working at World Com. During her first year of employment, Plaintiff allegedly encountered difficulties with some of World Com's switch technicians who, in the Plaintiff's words, "did not like dealing with a woman." (Def.App. p. 8) The technicians evidently gave the Plaintiff a hard time when she attempted to explain the technical errors she encountered while performing tests on World Com's lines. She found the technicians to be so demeaning and disagreeable that she complained about the situation to her supervisor who "took care of it." (Def.App. p. 8) The second problem stemmed from the Plaintiff's relationship with her supervisor, Kathy Hrabovsky. Specifically, Plaintiff attributes one of her poor performance appraisals to the fact that Ms. Hrabovsky did not like her. According to the Plaintiff, Ms. Hrabovsky felt the Plaintiff

was "A female she doesn't like." (Def.App. p. 26) Plaintiff believed that Ms. Hrabovsky did not like how the Plaintiff presented herself and that she was trying to make the Plaintiff into "something similar to her." *Id.*

At some point after her discharge, Plaintiff applied for Unemployment Benefits from the Texas Workforce Commission. The Determination On Payment of Unemployment Benefits, issued on February 25, 2000, states that the Plaintiff was eligible to receive benefits. The Determination provided the following official reason for approval of benefits: "Our investigation found your employer discharged you from your last work for a reason that is not misconduct connected with the work." (Plaintiff's App. p. 72) On June 6, 2000, Plaintiff filed a Charge of Discrimination with the Texas Commission on Human Rights. In her Charge, Plaintiff stated that she was discharged on January 28, 2000, and that World Com's reason for the adverse action was "misconduct, not related to work." (Def.App. p. 61) Plaintiff's Discrimination Statement, in which she described the alleged discrimination, states: "I believe that I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended. I was discharged as a result of a[sic] ongoing confrontation with an ex-boyfriend, who is still employed by the Respondent. He was not discharged." (Def.App. p. 61) Plaintiff checked the box labeled "sex" under the section of the Charge entitled, "Cause of Discrimination Based On." *Id.*

### Discussion

## 1 Applicable Legal Standards

### A Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure allows summary judgment only when the moving party demonstrates that there is no genuine issue as to any material fact and the party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Melton v. Teachers Ins. & Annuity Assoc. of Am.,* 114 F.3d 557, 559 (5th Cir.1997). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

Once the movant has discharged its initial burden under Rule 56, the nonmovant must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Topalian v. Ehrman,* 954 F.2d 1125, 1132 (5th Cir.1992), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). In weighing the evidence, the court must decide all reasonable doubts and inferences in the light most favorable to the nonmovant. *See Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988); *Thornbrough v. Columbus & Greenville R.R. Co.,* 760 F.2d 633, 640 (5th Cir.1985). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B Standard of Review for Texas Commission on Human Rights Discrimination Claims

Plaintiff's claims are brought pursuant to the Texas Commission on Human Rights Act, Tex. Labor Code § 21.001 *et seq.* The evidentiary framework for stat-

ing a claim for relief under this Texas law is the same as that employed under 42 U.S.C. § 2000e *et seq*, otherwise known as Title VII. *See, e.g., Twine v. Dickson,* 1999 WL 20979 (N.D.Tex.) (citing, *Harrington v. Harris,* 118 F.3d 359, 367 (5th Cir.); *La Pierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 n. 2 (5th Cir.1996); *Farrington v. Sysco Food Services, Inc.,* 865 S.W.2d 247, 251 (Tex. App Houston [1st Dist.] 1993); *City of Austin v. Gifford,* 824 S.W.2d 735, 738 (Tex.App.—Austin 1992)). Accordingly, the parties have referred only to Title VII in their briefs, and this court will analyze this Motion according to the Fifth Circuit's Title VII jurisprudence.

## II Defendant's Objections to Plaintiff's Summary Judgment Evidence

Defendant asks this court to disregard several pieces of evidence on the ground that such evidence will be inadmissible at trial. First, Defendant argues that Plaintiff's Texas Workforce Commission Determination On Payment of Unemployment Benefits is inadmissible under section 213.007 of the Texas Labor Code. Without ruling on the issue of admissibility, this court will disregard the Determination because it is not relevant to the grounds on which this court rests its opinion on the Defendant's Motion for Summary Judgment.

Defendant's remaining two objections are based on the Plaintiff's alleged mischaracterization of the evidence submitted by the Defendant in support of its Motion for Summary Judgment. These objections will be overruled because they are not, in fact, objections to the admission of evidence, but merely objections to this court's consideration of statements made by the Plaintiff in her brief. This court will read and analyze both parties' briefs in light of the supporting evidence, noting any relevant contradictions and giving the evidence

appropriate weight, based on those contradictions.

## III Exhaustion of Administrative Remedies

### A Exhaustion Standards

■ "It is well-settled that courts have no jurisdiction to hear Title VII claims to which the aggrieved party has not exhausted administrative remedies." *National Ass'n of Govern. Emp. v. City Pub. Serv.,* 40 F.3d 698, 711 (5th Cir.1994) (citing, *Tolbert v. United States,* 916 F.2d 245, 247–48 (5th Cir.1990) (per curiam)). Because the Equal Employment Opportunity Commission (EEOC) and its state equivalents provide administrative remedies for employment discrimination, a complaint filed pursuant to Title VII is limited to, "discrimination like or related to allegations contained in the [EEOC] charge and growing out of such allegation *during the pendency of the case before the Commission* [EEOC]." *Id.* (citing, *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970) (citation omitted)(original emphasis)).

■ Courts have interpreted the "like or related" requirement to permit claims that could "reasonably be expected to grow out of the charge of discrimination." *Sabrah v. Lucent Technologies,* 1998 WL 792503, *1 (N.D.Tex.) (citing, *Young v. City of Houston, Tex.,* 906 F.2d 177, 179 (5th Cir.1990) (citation omitted)); *see also Reno v. Metropolitan Transit Authority,* 977 F.Supp. 812, 818 (S.D.Tex.1997) (court found that Plaintiff's sexual harassment claim "would not have been developed and subsequently investigated during the course of the EEOC proceedings"). Additionally, although retaliation that occurs as result of filing an EEOC charge can be included in a Title VII case in district court without filing a new charge, *Gupta v. East Texas State University,* 654 F.2d 411,

414 (5th Cir.1981), retaliation claims arising prior to the filing of an EEOC charge may only be included if mentioned in the original charge. *See McCray v. DPC Industries, Inc.,* 942 F.Supp. 288, 294–95 (E.D.Tex.1996) (citations omitted).

### B Plaintiff's Retaliation Claim

■ Plaintiff's retaliation claim arises out of her termination by World Com, allegedly for complaining about sexual harassment by Jeffrey Redding. The alleged retaliation took place approximately four months prior to the filing of Plaintiff's EEOC Charge, but the Charge did not contain a claim of retaliation. Plaintiff did not check the "retaliation" box on the Charge, nor did she include any statements regarding retaliation. Therefore, Plaintiff failed to exhaust her administrative remedies for the claim of retaliation and this court does not have jurisdiction to entertain that claim. Defendant's Motion for Summary Judgment is hereby GRANTED as to Plaintiff's claim of retaliation.

### C Plaintiff's Sexual Harassment Claim

■ Plaintiff's sexual harassment claim is based on the allegation that World Com allowed Jeffrey Redding to create a hostile work environment by continually harassing the Plaintiff and threatening her physically. Defendant argues that Plaintiff failed to exhaust the administrative remedies for her harassment claim because she did not include allegations of sexual harassment in her EEOC Charge. Plaintiff responds that the Discrimination Statement included in her EEOC charge, "encompasses the theory of sexual harassment liability alleged." (Plaintiff's Resp. p. 5) The specific statement referenced is as follows: "I was discharged as a result of a[sic] ongoing confrontation with an ex-boyfriend, who is still employed by the Respondent." (Def.App. p. 61)

This court agrees with the Plaintiff and finds that her sexual harassment claim is "like or related" to the allegations contained in her EEOC Charge. The Charge form does not contain a separate box to check for "sex discrimination" and "sexual harassment"; it contains only a box entitled "sex discrimination." Therefore, any allegations of sexual harassment must be based on the content of the Discrimination Statement. Plaintiff's Discrimination Statement specifically references the behavior that allegedly created the hostile work environment—an ongoing confrontation with her ex-boyfriend. It is more than reasonable to expect that Plaintiff's sexual harassment claim would "have been developed and subsequently investigated during the course of the EEOC proceedings" based on the Discrimination Statement contained in her Charge. *Reno,* 977 F.Supp. at 818. Therefore, this court will consider the merits of Defendant's Motion for Summary Judgment on Plaintiff's sexual harassment claim.

## IV Analysis of Plaintiff's Remaining Claims

### A The McDonnell Douglas Framework

The evidentiary framework for evaluating Title VII claims was established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *McDonnell Douglas* dictates that a Title VII plaintiff bears the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. *See La Pierre,* 86 F.3d at 448 (citing, *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). If the plaintiff meets this burden, an inference of intentional discrimination arises and the burden shifts to the defendant to articulate a legit-

imate, nondiscriminatory reason for the allegedly discriminatory action. *See id.* Once the defendant articulates a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show that the given reason is merely a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

**B Plaintiff's Sex Discrimination Claim**

 Defendant initially argued that Plaintiff cannot meet her burden of proving a prima facie case of discrimination because she was replaced by another female. In so doing, Defendant relied on the four-part test enunciated by the Fifth Circuit in *Marks v. Prattco, Inc.,* 607 F.2d 1153, 1155 (5th Cir.1979), which provides that in order to make out a prima facie case of racial discrimination, plaintiffs must show: 1) they were members of a protected minority; 2) they were qualified for the jobs from which they were discharged; 3) they were discharged; and 4) after they were discharged their employer filled the positions with nonminorities. In her Response, Plaintiff correctly notes that in both race and sex discrimination cases, "the single fact that a plaintiff is replaced by someone within the protected class does not negate the possibility that the discharge was motivated for [sic] discriminatory reasons." (Plaintiff's Resp. p. 8, citing, *Hornsby v. Conoco, Inc.,* 777 F.2d 243, 246 (5th Cir.1985)) In fact, "[i]f an employee is discharged under circumstances in which an employee of another sex would not have been discharged, an inference of discrimination arises irrespective of the gender of the employee's replacement." *Equal Employment Opportunity Commission v. Brown & Root, Inc.,* 688 F.2d 338, 340 (5th Cir.1982).

Thus, the mere fact that the Plaintiff was replaced by a woman will not prevent her from making a prima facie showing of sex discrimination. However, the fact that Plaintiff failed to adduce sufficient evidence in support of her sex discrimination claim is fatal to her success in the first prong of the *McDonnell Douglas* test. Plaintiff's Response to this Motion does not address the prima facie showing requirement at all, except to argue that Plaintiff's replacement by another woman does not defeat her claim. Moreover, the evidence before this court fails to demonstrate that Plaintiff was qualified for the job from which she was discharged or that she was "discharged under circumstances in which an employee of another sex would not have been discharged." *See Marks,* 607 F.2d at 1155; *Equal Employment Opportunity Commission,* 688 F.2d at 340 (5th Cir.1982).

The Defendant provided a well-documented account of the deterioration in Plaintiff's job performance during the year prior to her discharge. The Plaintiff provided nothing to rebut this evidence, other than an assertion that one of her many poor performance appraisals was based on the alleged animus of her female supervisor. Additionally, there is no evidence to support Plaintiff's argument that World Com's decision not to terminate Mr. Redding's employment meant that the Plaintiff was discharged under a circumstance in which a male employee was not discharged. Nothing in the evidence reveals a comparable deterioration in Mr. Redding's job performance during the time period at issue. In fact, the evidence reveals nothing at all about Mr. Redding's performance, and thus this court must assume that Mr. Redding continued to be qualified for his position at World Com. Finally, Plaintiff's alleged difficulties with World Com's technicians also fails to amount to a prima facie showing of discrimination based on sex.

Plaintiff has failed to meet her initial burden of proving a prima facie case of discrimination by a preponderance of the evidence, and thus, Defendant's Motion for Summary Judgment is **GRANTED** as to the sex discrimination claim.

## C Plaintiff's Sexual Harassment Claim

▆ Plaintiff alleges that World Com allowed Jeffrey Redding to create a hostile work environment by continually harassing her and threatening her physically. Plaintiff claims that this harassment was severe enough to affect the terms and conditions of her employment, and that it ultimately resulted in her discharge. In order to establish a prima facie case for a hostile work environment, Plaintiff must show the following: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a term, condition or privilege of employment; and (5) respondent superior, i.e., that World Com knew or should have known of the harassment in question and failed to take prompt remedial action. *See B.T. Jones v. Flagship International*, 793 F.2d 714, 719–20 (5th Cir. 1986).

Defendant argues that Plaintiff cannot establish a prima facie case of hostile work environment sexual harassment because any harassment that may have occurred was not based on the Plaintiff's sex; instead, it was based on personal animosity between the Plaintiff and Mr. Redding, resulting from their failed relationship. In support of this argument, Defendant cites similar cases from outside of the Fifth Circuit in which the courts held that the alleged harassment was not based on sex. *See, e.g., Succar v. Dade County School Board*, 229 F.3d 1343 (11th Cir.2000); *Hu-*

*ebschen v. Department of Health and Social Services*, 716 F.2d 1167 (7th Cir.1983). Plaintiff responds by arguing that the harassment was based on sex because if the Plaintiff had been a man, she would not have been subject to Mr. Redding's abuse. Plaintiff claims that the facts of this case create a case of first impression in the Fifth Circuit, and that *Succar v. Dade County School Board*, the case on which the Defendant relies most heavily in its argument, is a "renegade opinion," which created "bad law" that should be disregarded by this court. (Plaintiff's Resp. p. 11)

There is, in fact, a district court case in the Fifth Circuit that addresses this issue, and it takes the position asserted by the Plaintiff: harassment stemming from a failed relationship is harassment based on sex. *See Green v. Administrators of the Tulane Educational Fund*, 1999 WL 203262, *8 (E.D.La.). In *Green v. Administrators of the Tulane Educational Fund*, the plaintiff was engaged in a romantic relationship with her supervisor. *Id.* at *2. When the relationship ended, the defendant allegedly engaged in harassing behavior which included: 1) ransacking the plaintiff's files; 2) refusing to pay for the plaintiff's parking; 3) giving the plaintiff the silent treatment; and 4) greatly diminishing her responsibilities. *Id.* at *8. The court rejected the defendant's argument that sex-neutral hostile conduct cannot be used to support a hostile work environment claim, and held that a reasonable jury could find that the harassment was based on sex. *Id.* In ruling on the defendant's Motion for Reconsideration, the court explained further that it was "unprepared to find as a matter of law that simply because a person has had an 'affair gone wrong,' he or she is unable to state a cause of action for sexual harassment in the context of a hostile work environment." *Green v. Administrators of the Tulane*

*Educational Fund,* 1999 WL 622904, *2 (E.D.La.).

The "renegade opinion" of *Succar v. Dade County School Board* describes a factual scenario more analogous to the present case. The plaintiff in *Succar* had a consensual sexual relationship with a fellow school teacher that ended badly after the defendant made threats toward the plaintiff's wife and son. *Succar,* 229 F.3d at 1344. The defendant then proceeded to verbally and physically harass the plaintiff at school, in front of colleagues and students, resulting in a suit for hostile work environment sexual harassment. *Id.* The district court dismissed the claim, finding that the plaintiff's sex was not the underlying reason for the harassment; instead, the harassment was motivated by the defendant's contempt for the plaintiff following their failed relationship. *Id.* at 1345. The court explained that, "Title VII prohibits discrimination; it is not a shield against harsh treatment at the work place. Personal animosity is not the equivalent of sex discrimination.... The plaintiff cannot turn a personal feud into a sex discrimination case...." *Succar,* 229 F.3d at 1344 (quoting, *McCollum v. Bolger,* 794 F.2d 602, 610 (11th Cir.1986) (footnote and internal quotation marks omitted)).

The Seventh Circuit employed a similar line of reasoning in *Huebschen v. Department of Health and Social Services,* a quid pro quo sexual harassment case in which the plaintiff brought an action under the Equal Protection Clause of the United States Constitution. *Huebschen* involved a consensual relationship between an employee and his supervisor that ended on unfriendly terms when the employee terminated the relationship. 716 F.2d at 1169. After the breakup, the supervisor recommended that the employee be demoted to his previous position with the employer. *Id.* In reviewing the facts of

the case, the court found that, "[t]here was no testimony before the court that the defendant ever told the plaintiff that if he did not comply with her sexual requests or have an affair with her he would receive an unfavorable recommendation." *Id.* The court then explained that under the Equal Protection Clause, "[T]he decisionmaker [must have] selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects *upon an identifiable group.*" *Id.* at 1170 (quoting, *Personnel Administrator v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (original emphasis)). Based on the evidence before it, the court rejected the plaintiff's attempt to assert a classification based on sex and held that "the proper classification, if there was one at all, was the group of persons with whom [the defendant] had or sought to have a romantic affair." *Id.* at 1172.

Other courts have similarly rejected attempts to label sex-neutral harassment or discrimination as "sex discrimination" or "sexual harassment" merely because it followed the break up of a consensual relationship between a man and a woman. *See, e.g., Keppler v. Hinsdale Township High School,* 715 F.Supp. 862, 869 (N.D.Ill. 1989) (holding that in a quid pro quo case, when an employer penalizes an employee after the termination of a consensual relationship, the employee has to show that the penalty was a result of the employee's refusal to give in to demands for additional sexual relations, and not simply the result of anger over the failure of the past relationship).

This court finds the rational of *Succar, Huebschen,* and *Keppler* to be more persuasive than that asserted by the court in *Green* and by the Plaintiff in this case. As in the *Succar* line of cases, the harassment in the present case was sex-neutral and thus it is not within the intended scope of

Title VII's protections. The Plaintiff had a consensual relationship with Jeffrey Redding that was unfortunately accompanied by physical and emotional abuse. After the couple agreed to end the relationship, the abuse continued. However, there is absolutely no evidence that the behavior was intended to bring the Plaintiff back into the relationship or to elicit further sexual relations. In fact, Mr. Redding's new girlfriend allegedly participated in the harassment. In addition, there is no evidence that the abuse itself had any sexual overtones, that any sexual language was used, or that Mr. Redding attempted to use the Plaintiff's female sex as a means of harassing her.

In finding that the harassment was not based on sex in this case, this court does *not* find "as a matter of law that simply because a person has had an 'affair gone wrong,' he or she is unable to state a cause of action for sexual harassment in the context of a hostile work environment." *Green,* 1999 WL 622904, 2. Instead, this court holds that the mere fact that two co-workers had an "affair gone wrong" does not in itself turn sex-neutral harassment into harassment based on sex. The Plaintiff cannot demonstrate that a genuine issue of material fact exists as to whether or not Mr. Redding's harassment was based on sex. Therefore, the Defendant's Motion for Summary Judgment is **GRANTED** as to the Plaintiff's sexual harassment claim.

### Conclusion

For the reasons stated above, the Defendant's Motion for Summary Judgment is **GRANTED** in its entirety and the Plaintiff's claims are hereby **DISMISSED.**

It is so **ORDERED.**