**Linda J. ADAMS, et al.,**

v.

**GIANT FOOD, INC., et al.**

**No. CIV.JFM–99–1244.**

United States District Court,
D. Maryland.

Sept. 30, 2002.

JoAnn Patricia Myles, Largo, MD, for Plaintiffs.

Robert P. Watkins, Kumiki Gibson, Michael K. Ross, Michael P. Matthews, Mara W. Murphy, Andrew W. Rudge, Williams and Connolly LLP, Washington, DC, for Defendants.

## MEMORANDUM

MOTZ, District Judge.

Plaintiffs Ronald Brown, Bernard Howard Jr., Gregory Sledge, Michael Elchin,

and Steven Stewart have brought suit against Giant Food, Inc. ("Giant"), Peter Manos, and Deborah Lilly alleging that they were discharged in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Specifically, Brown, Howard, and Sledge allege that they were discharged on the basis of race in violation of Title VII and section 1981. Additionally, all of the plaintiffs allege that Giant retaliated against them in violation of Title VII. The defendants have filed a motion for summary judgment on all counts and for attorneys' fees and costs. For the reasons that follow, I will grant the motion for summary judgment, however, I will deny the motion for attorneys' fees and costs.

## I.

The plaintiffs are former employees of Giant who worked on the night crew at Giant's store in Crofton, Maryland. Plaintiffs Brown, Howard, and Sledge are African–American and Plaintiffs Elchin and Stewart are white. The collective bargaining agreement that covered the plaintiffs authorized two rest periods of fifteen minutes each during the first and second parts of the shift. (*See* Arbitrator Decision, Def. Ex. 6 at 3; *see also* Howard Statement, Def.Ex. 4(G).) There was an understanding between management and the night crew that they could combine their fifteen minute breaks into one 30 minute break.

(*See* Arbitrator Decision, Def.Ex. 6 at 3.) In September 1998, George Barthel, who was then a district supervisor in the Loss Prevention Department, determined that the plaintiffs and other night shift employees were "stealing time" by overstaying their breaks and/or sleeping while on the clock. By reviewing tapes from the security cameras at the Crofton store, Barthel was able to determine that each of the plaintiffs overstayed his break on at least two occasions for approximately 40 minutes to an hour and 20 minutes. Additionally, each plaintiff signed a statement in which he admitted to overstaying his break.[1]

As a result of their violations of the collective bargaining agreement and Giant's policy prohibiting stealing time, eight employees (five African–American and three white), including the plaintiffs, were suspended on approximately October 9, 1998 and then terminated on approximately October 14, 1998. (*See* Barthel Decl. ¶ 17–18, Def.Ex. 4; Loss Prevention Incident Report, Def.Ex. 4(J); Kapuscinski Decl ¶ 4, Def.Ex. 5.) Subsequently, the plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC").[2] The EEOC issued right-to-sue notices to the plaintiffs in February 1999 after determining that it was "unable to conclude that the information obtained establishes violations of the statutes." On April 30, 1999, the plaintiffs initiated this suit.[3]

---

1. Several plaintiffs dispute the authenticity of copies of the alleged statements submitted by Giant as exhibits. Significantly, the plaintiffs do not deny that they signed statements or that the signed statements stated that they had overstayed their breaks. They simply allege that the exhibits submitted by Giant are forgeries of the actual statements that they signed (because they signed statements written on a yellow legal pad, rather than on an official Giant form). (*See* Brown Aff. ¶ 19, Pl.Ex. 1; Sledge Aff. ¶ 20, Pl.Ex. 2, Howard Aff. ¶ 18, Pl.Ex. 3.)

2. Three of the terminated employees instead protested their terminations through the union grievance and arbitration procedure set forth in their collective bargaining agreement.

3. Since the suit was brought, a number of claims have been dismissed, including all of the claims of 19 other plaintiffs. (*See* Voluntary Notice of Dismissal, Def.Ex. 1; Stipulation of Dismissal, Def.Ex. 2; Order dated December 14, 1999, Def.Ex. 3.)

## II.

### A.

■ The defendants argue that they are entitled to summary judgment on the claims of Plaintiffs Brown, Howard, and Sledge that they were discharged on the basis of race in violation of both Title VII and section 1981.[4] Since there is no evidence of direct discrimination, the plaintiffs must present enough evidence to satisfy the *McDonnell Douglas* proof scheme. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to establish a prima facie case of discriminatory discharge, each plaintiff must establish: (1) that he is a member of a protected class; (2) that he was qualified for his job and his job performance was satisfactory; (3) that he was terminated; and (4) that other employees who are not members of the protected class were retained under similar circumstances. *Hughes v. Bedsole,* 48 F.3d 1376, 1383 (4th Cir.1995); *Porter v. Nat'l Conserv, Inc.,* 51 F.Supp.2d 656, 659 (D.Md. 1998); *see also Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 607 (4th Cir. 1999). If the plaintiff establishes a prima facie case, the burden shifts to the employer to advance a legitimate, nondiscriminatory reason for the adverse employment action. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer successfully proffers such an explanation, the burden returns to the plaintiff to show that the proffered reason is a pretext for impermissible discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ The plaintiffs are unable to establish the fourth element of a prima facie case. The plaintiffs have offered no evidence that similarly situated non–African–American employees were retained under similar circumstances. In fact, the evidence establishes that Giant terminated *both* African–American and white employees, including the plaintiffs, who were caught overstaying their breaks and sleeping on the job. *See, e.g., Logan v. Kautex Textron North America,* 259 F.3d 635, 639 (7th Cir.2001) (finding the fourth element of a prima facie case not met by an African–American plaintiff where white employees were also terminated under the same circumstances).

The plaintiffs argue that they have established a genuine dispute of material fact because, according to them, white females were allowed to come to work late and had their time cards manipulated by managers to show that they were on time. This argument fails because the women who allegedly came to work late were not similarly situated to the plaintiffs. They did not work on the night-shift. They were supervised, unlike the night shift. There is no evidence to show that they came to work late by forty minutes to an hour and twenty minutes or that they were caught sleeping while they were on the clock. Finally, there is also no evidence that the alleged actions of these women resulted in the women working overtime hours for which they were paid extra. (*See* Arbitrator Decision, Def.Ex. 6 at 6, 12.) Simply put, the evidence clearly establishes that similarly situated employees who were caught overstaying their breaks and sleeping while on the job or engaging in similarly unacceptable behavior were treated the same regardless of race. Thus, the plaintiffs have failed to establish the fourth element of a prima facie case.

4. "Under Title VII and . . . Section 1981, the elements of the required prima facie case are the same." *Gairola v. Com. of Va. Dept. of General Services,* 753 F.2d 1281, 1285 (4th Cir.1985).

■ Even assuming the plaintiffs could establish a prima facie case of discrimination, their claims for racial discrimination still fail. Giant has offered a legitimate, nondiscriminatory reason for terminating the plaintiffs—specifically, overstaying breaks for large amounts of time and sleeping while on the job. *See, e.g., Barge v. Anheuser–Busch, Inc.,* 87 F.3d 256, 259 (8th Cir.1996) (finding break abuse a legitimate nondiscriminatory reason for an adverse employment action). The plaintiffs argue that they have established that this reason is pretextual because other non–African–American employees were not terminated or punished for overstaying their breaks. Again, the plaintiffs point to various white female employees who were allegedly allowed to arrive to work late without suffering any adverse consequences. As discussed above, even assuming the plaintiffs' allegations are true, there is no evidence that the female employees were similarly situated to the plaintiffs and this argument, therefore, fails to establish a genuine dispute over pretext. Accordingly, I will grant summary judgment in favor of the defendants on the plaintiffs claims of racial discrimination.[5]

## B.

Giant next argues that it is entitled to summary judgment on the claims of all plaintiffs that they were retaliated against in violation of Title VII. As an initial matter, I must determine whether each plaintiff exhausted his administrative remedies. "It is axiomatic that a claimant under Title VII must exhaust his administrative remedies by raising his claim before the EEOC." *Sloop v. Mem'l Mission Hosp., Inc.,* 198 F.3d 147, 148 (4th Cir.1999). It is undisputed that Elchin and Stewart exhausted their administrative remedies. Howard and Sledge, however, did not exhaust their administrative remedies. It is at least significant, if not dispositive, that Howard did not check the box marked "Retaliation" in his EEOC charge. *See, e.g., Auston v. Schubnell,* 116 F.3d 251, 254 (7th Cir.1997); *Thompson v. KN Energy, Inc.,* 177 F.Supp.2d 1238, 1254 (D.Kan. 2001).[6] It is dispositive that Howard did not mention the word "retaliation" in his EEOC charge and did not make any allegation of retaliatory conduct. Additionally, although Sledge checked the box marked "Retaliation," there is no allegation of retaliation in his EEOC charge narrative. (*See* Sledge EEOC charge,

---

**5.** The section 1981 claims against Manos and Lilly will be granted for an additional reason. Directors or managers can only be held personally liable when they "intentionally cause a corporation to infringe the rights secured by" section 1981. *Tillman v. Wheaton–Haven Recreation Ass'n, Inc.,* 517 F.2d 1141, 1145 (4th Cir.1975); *see also Shirkey v. Eastwind Cmty. Dev. Corp.,* 941 F.Supp. 567, 572 (D.Md.1996) (requiring intentional discrimination in order to establish a section 1981 violation), *modified on other grounds,* 993 F.Supp. 370 (D.Md.1998). The plaintiffs have provided no evidence, and in fact do not even allege, that either Manos or Lilly was involved in the decisions to terminate the plaintiffs. In fact, the only evidence demonstrates that they were not involved in those decisions. (*See* Kapuscinski Decl. ¶ 5, Def.Ex. 5.) Finally, it is unclear from the complaint whether the

plaintiffs are bringing suit under Title VII against Manos and Lilly. To the extent they are, summary judgment will also be granted on these claims because supervisors are not subject to individual liability. *See Lissau v. Southern Food Serv., Inc.,* 159 F.3d 177, 180–81 (4th Cir.1998).

**6.** Brown also did not check the box marked "Retaliation." However, when viewing the evidence in the light most favorable to Brown, it is possible to discern a retaliation claim from the narrative in his EEOC charge. (*See* Brown EEOC Charge, Def.Ex. 8 (stating that he was terminated because he informed management about an employee who came to work late, did not punch in, and was not disciplined)). Brown's retaliation claim, however, fails for alternative reasons discussed below.

Def.Ex. 11.) Thus, summary judgment will be granted to Giant on the retaliation claims of Howard and Sledge. *See, e.g., Perez v. MCI World Com Communications,* 154 F.Supp.2d 932, 938 (N.D.Tex. 2001).

▮ On the merits, none of the plaintiffs, including Howard and Sledge, is able to establish a prima facie case of retaliation. To prove a prima facie case of retaliation, an employee must show that: (1) he engaged in a protected activity; (2) the employer took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the asserted adverse action. *Matvia v. Bald Head Island Mgmt., Inc.,* 259 F.3d 261, 271 (4th Cir.2001) (*quoting Von Gunten v. Maryland,* 243 F.3d 858, 863 (4th Cir.2001)). order to establish that he engaged in protected activity, a plaintiff must show that he opposed an unlawful employment practice or participated in a Title VII investigation, proceeding, or hearing. *Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 259 (4th Cir.1998). It is undisputed that the plaintiffs did not participate in a Title VII investigation, proceeding, or hearing prior to their terminations. Therefore, the plaintiffs must establish that they opposed an unlawful employment practice.

The plaintiffs, except for Howard and Sledge, point to their narratives in their EEOC complaints to explain how they engaged in protected activity. (*See* Pl.'s Opp. at 19 (explaining that Stewart complained about preferential treatment being given to females); Brown EEOC Charge, Def.Ex. 8 (explaining that he was terminated because he informed management about an employee who came to work late, did not punch in, and was not disciplined); Elchin EEOC Charge, Def.Ex. 9 (explaining that he was retaliated against because he "gave evidence in support of African–American staffers" such as the fact that the African–American employees were not allowed to cook in the store and use the deli area and the preferential treatment received by female employees); Stewart EEOC Charge, Def.Ex. 12 (explaining he was fired because he was friends with African–American employees, gave evidence in support of African–Americans, and complained about preferential treatment given to females); *see also* Brown Aff. ¶ 14, Pl.Ex. 1; Sledge Aff. ¶ 14; Pl.Ex. 2.))

▮ Even viewing the plaintiffs' allegations in the light most favorable to the plaintiffs, it establishes, at most, that they merely complained about favoritism towards a few specific employees. (*See* Brown EEOC Charge at 2, Def.Ex. 8.) "Favoritism, while unfair, is not violative of Title VII in the absence of improper discriminatory intent." *Nichols v. Comcast Cablevision of Maryland,* 84 F.Supp.2d 642, 655 (D.Md.2000) (*citing Holder v. Raleigh,* 867 F.2d 823, 825–26 (4th Cir.1989)); *see also Settle v. Baltimore County,* 34 F.Supp.2d 969, 1001 (D.Md.1999) (explaining that favoritism, rather than racial discrimination, was behind a disparate opportunity in training). It also is clear that the substantial majority of the plaintiffs' complaints were about general favoritism towards females. Thus, to the extent the plaintiffs allege that they complained of favoritism based upon improper discriminatory intent, that intent is gender-based rather than race-based. Because the retaliation claims are based on complaints of racial discrimination, (*see* Complaint ¶¶ 85, 86, 89), alleged complaints of gender discrimination that equally affected male African–American employees and male white employees is irrelevant. Accordingly, it is clear that the plaintiffs did not oppose employment actions that violated Title VII on the basis of

race when they complained of favoritism towards a few female employees.

█ Still, the inquiry does not end because a plaintiff bringing a claim under the opposition clause of Title VII need not establish that the employment practice he opposed in fact violated Title VII. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 357 n. 1 (4th Cir.1985), *abrogated on other grounds by, Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *see also Dea v. Washington Suburban Sanitary Comm'n*, 11 Fed.Appx. 352 (4th Cir.2001) (unpublished). The plaintiff must, however, at a minimum have held a reasonable good faith belief at the time he opposed an employment practice that the practice was violative of Title VII. *See Dea*, 11 Fed. Appx. at 357 (*citing Little v. United Techs.*, 103 F.3d 956 (11th Cir.1997)). In *Little*, the Eleventh Circuit held that a plaintiff who opposed a single comment by a co-worker did not have a reasonable good faith belief to believe the comment violated Title VII. Specifically, the Court stated that in order to establish a reasonable good faith belief, a plaintiff "must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented." 103 F.3d at 960. Here, there is no evidence that the plaintiffs held an objectively or subjectively reasonable belief that favoritism towards a few white female employees was an unlawful employment practice, especially in light of the fact that their suit is based on racial discrimination. *See id.; see also Balazs v. Liebenthal*, 32 F.3d 151, 158–59 (4th Cir.1994). Thus, the plaintiffs are unable to establish the first element of a prima facie case of retaliation, and summary judgment will be granted in favor of Giant on all of their retaliation claims.

## C.

I am aware that "summary judgment is appropriate only after 'adequate time for discovery.'" *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir.1996) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In fact, "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Id.* (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Plaintiffs' counsel has filed an affidavit pursuant to Fed.R.Civ.P. 56(f) explaining the reasons why discovery is necessary. *See* Myles Aff., Pl.Ex. 4; *see also Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (holding that a party must present the court with an affidavit particularly specifying the legitimate needs for further discovery). As an initial matter, the plaintiffs fail to explain how any of this discovery is specifically relevant. The plaintiffs only assert that it is necessary "in order to fully prosecute and defend their claims." (*See* Myles Aff. ¶ 4, Pl.Ex. 4.) Such a generalized request barely, if at all, meets the standard set forth in *Nguyen*. Still, I will consider the necessity of the discovery requests made by the plaintiffs.

The plaintiffs first seek discovery of several documents: the alleged original statements given by the plaintiffs, information on union grievance hearings, copies of all relevant union contracts, video tapes of the plaintiffs (which they have in fact received as an exhibit to this motion), loss prevention files, and various employees' personnel files. None of this discovery, however, is relevant to the issue of whether all similarly situated employees, including the plaintiffs themselves, were treated the same by Giant regardless of race. Additionally, all of the requested discovery is

clearly irrelevant to the issue of whether the plaintiffs engaged in protected activity.

The plaintiffs also seek to depose all persons involved in the discharge, and other store employees and witnesses to the break practice at the Giant store where the plaintiffs were employed. While one could hypothetically imagine circumstances under which the requested depositions could further the plaintiffs claims, the plaintiffs have provided no information about the specific information or the specific individuals that they seek to discover.

"It is not enough for [the plaintiffs] merely to lament the need for more discovery." *Morrow v. Farrell,* 187 F.Supp.2d 548, 551 (D.Md.2002). The purpose of rule 56(f) is not to allow the non-moving party to engage in a fishing expedition. *See id.; see also Goodell v. Rehrig Int'l, Inc.,* 683 F.Supp. 1051, 1054 (E.D.Va.1988), *aff'd,* 865 F.2d 1257 (4th Cir.1989) ("[T]he mere hope that something might turn up in further discovery does not satisfy the standards of Rule 56(f)."). Because that is precisely what the plaintiffs are attempting to do here by requesting these depositions and documents, the motion for summary judgment will be granted without granting plaintiffs the discovery they seek.[7]

### III.

█ In addition to moving for summary judgment, the defendants seek attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b) and 42 U.S.C. § 2000e–5(k). Under Title VII,

a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith,* there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.

*Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (emphasis in original). A finding of bad faith is not necessary. *Id.*

█ The main basis for Giant's request for sanctions appears to be a belief that the plaintiffs are attempting to "short circuit the union grievance and arbitration process." (*See* Def.Mem. at 14.) Although federal law does favor arbitration of labor disputes and arbitration may have been wise in this case, *see Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875, 879 (4th Cir.1996), Title VII and section 1981 do not require a plaintiff to exhaust internal union procedures. Therefore, I decline to award attorneys' fees and costs on that basis.

█ It is also true that the plaintiffs' claims appear at first glance to be unreasonable since both white and African–American employees were fired for overstaying their breaks. Still, it is not frivolous to argue that the white employees were fired for associating and/or defending African–American employees and in an attempt to cover-up racial discrimination. It is also not frivolous to argue that the plaintiffs were retaliated against for complaining about preferential treatment given to a few white females (even if it is slightly inexplicable that the retaliation claims are based on racial discrimination rather than gender discrimination). Hav-

---

**7.** The case of *Tray Carter v. Baltimore County, Maryland,* 2002 WL 1580679 (4th Cir.2002), cited by the plaintiffs in their unsolicited second supplemental memorandum, is inapposite. *Carter* addresses the situation where a court converts a motion to dismiss into a motion for summary judgment without notice. In this case, it is clear to both parties that the court is treating Giant's motion for summary judgment as such a motion.

ing considered the record before me, I cannot conclude as a matter of law that the plaintiffs' claims were frivolous, unreasonable, or groundless. Accordingly, the defendants' motion for attorneys' fees and costs will be denied.

A separate order is being entered herewith.

### ORDER

For the reasons stated in the accompanying memorandum, it is, this *30th* day of September 2002

ORDERED that

1. Defendants' motion for summary judgment is granted;

2. Defendants' motion for attorneys' fees and costs is denied;

3. Judgment is entered for the defendants; and

4. This case is closed.